UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLEAR IMAGING RESEARCH LLC, | Case No.: 25-cv-00221-GPC-BLM |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S PARTIAL MOTION TO DISMISS** |
| v. | |
| GOOGLE LLC, | **[ECF No. 13]** |
| Defendant. | |

On April 7, 2025, Defendant Google LLC ("Google") filed a partial motion to dismiss Plaintiff Clear Imaging Research LLC ("CIR")'s complaint pursuant to Federal Rule of Civil Procedure ("Rule")[1] 12(b)(6).  ECF No. 13.  On April 30, 2025, CIR filed a response in opposition to Google's motion to dismiss.  ECF No. 20.  On May 9, 2025, Google filed a reply.  ECF No. 21.  The Court held a hearing on the motion on June 13, 2025.  For the reasons below, the Court GRANTS Google's partial motion to dismiss CIR's complaint.

/ / /

---

[1] "Rule" or "Rules" refer to the Federal Rules of Civil Procedure unless otherwise noted.

# BACKGROUND

On January 30, 2025, CIR filed a complaint against Google, alleging infringement of U.S. Patent Nos. 9,800,788 (the "'788 Patent"), 9,860,450 (the "'450 Patent"), 9,013,587 (the "'587 Patent"), 11,595,583 (the "'583 Patent"), 10,171,740 (the "'740 Patent"), 11,165,961 (the "'961 Patent"), and 11,457,149 (the "'149 Patent") (collectively, the "asserted patents"). Compl., ECF No. 1. Specifically, CIR alleges that Google has infringed the asserted patents by utilizing CIR's digital camera technology in numerous Google products, specifically Google Pixel smartphones. Compl. ¶¶ 9-18, 22-98. CIR further alleges that Google induces infringement of the claims of the asserted patents by "encourag[ing] and instruct[ing] its customers and end users" to use its products "in ways that directly infringe" the asserted patents. *Id.* ¶¶ 27, 38, 49, 60, 71, 82, 93.

The '583 Patent, '961 Patent, and '149 Patent are all entitled "method and apparatus for capturing digital video." Compl. ¶¶ 56, 78, 89; *see also* ECF No. 1-23 ('583 Patent) at 2;[2] ECF No. 1-28 ('961 Patent) at 2; ECF No. 1-32 ('149 Patent) at 2. The '587 Patent is entitled "method and apparatus to correct digital image blur by combining multiple images." Compl. ¶ 45; *see also* ECF No. 1-17 ('587 Patent) at 2. The '740 Patent is entitled "method and apparatus to correct blur in all or part of a digital image by combining plurality of images." Compl. ¶ 67; *see also* ECF No. 1-25 ('740 Patent) at 2. The '450 Patent is entitled "method and apparatus to correct digital video to counteract effect of camera shake." Compl. ¶ 34; *see also* ECF No. 1-15 ('450 Patent) at 2. And the '788 Patent is entitled "method and apparatus for using motion information and image data to correct blurred images." Compl. ¶ 23; *see also* ECF No. 1-11 ('788 Patent) at 2.

---

[2] Page numbers refer to CM/ECF pagination.

1    The asserted patents all share the same specification.  *See, e.g.,* '587 Patent at 1:01-

2    12:22.  The invention disclosed in the shared specification "processes image data in order

3    to correct an image for distortion caused by imager movement or by movement of the

4    subject being imaged.  '587 Patent at 2:27-29; *see also id.* at 1:22-26 ("More specifically,

5    this invention relates to processing of digitized image data in order to correct for image

6    distortion caused by relative motion between the imaging device and the Subject at the

7    time of image capture, or by optical distortion from other sources.").

8    In describing the background of the inventions, the specification explains that

9    "current techniques for increasing the sharpness of an image do not really 'correct' the

10   blur that results from relative motion between a camera and a subject being

11   photographed.  In fact, the data loss from increasing the sharpness can result in a less

12   accurate image than the original." *Id.* at 2:03-07.  Accordingly, there is a need for "a

13   technique that corrects for distortion in photographs without adding excessively to the

14   price, robustness or weight of a camera or other imaging device, or adversely affecting

15   image quality." *Id.* at 2:20-23.  To address this need, the asserted patents teach

16   inventions that "process[] image data in order to correct an image for distortion caused by

17   imager movement or by movement of the subject being imaged." *Id.* at 2:27-29.

18   As an example of the claimed inventions, Independent Claim 15 of the '587 Patent

19   recites:

20       15.  An apparatus comprising:

21       a viewfinder configured to display an image;

22       a processor configured to designate a main subject in the image in the viewfinder;

23       a recording medium configured to capture a plurality of photographic images,
         wherein the plurality of images includes the designated main subject; and

24       a processor configured to combine the plurality of photographic images to generate
25       a corrected image, wherein the processor determines, for each image point in the
         main subject of the corrected image, a pixel value for the image point based on
26       pixel values in the plurality of photographic images at the image point.

27
                                                    3
28                                                                              25-cv-00221-GPC-BLM

*Id.* at 13:24-36.

On April 7, 2025, Google moved to dismiss part of CIR's complaint for failure to state a claim pursuant to Rule 12(b)(6).  ECF No. 13.  Specifically, Google argues that CIR cannot allege claims for infringement of the '587 Patent, the '740 Patent, the '961 Patent, and the '149 Patent (collectively, the "Combined-Image Patents") because all the claims in the Combined-Image Patents claim patent-ineligible subject matter, and, therefore, are invalid under 35 U.S.C. § 101.  *See generally id.*

<strong>LEGAL STANDARDS</strong>

## I.    Rule 12(b)(6)

Rule 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."  Dismissal under Rule 12(b)(6) is appropriate where the complaint fails to state a cognizable legal theory or allege sufficient facts to support a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

When reviewing a Rule 12(b)(6) motion, the court accepts all facts alleged in the complaint as true and draws all reasonable inferences in favor of the non-moving party.  *Chubb Custom Inc. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013).  Although the general rule prohibits a district court from considering evidence outside the pleadings in reviewing a motion to dismiss, it may properly consider "documents attached to the complaint, documents incorporated by reference in the complaint, or

4

1    matters of judicial notice[.]" *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

2    In the realm of patents "a court need not accept as true allegations that contradict matters

3    properly subject to judicial notice or by exhibit, such as the claims and patent

4    specification." *Secured Mail Sols., LLC v. Universal Wilde*, 873 F.3d 905, 913 (Fed. Cir.

5    2017) (internal quotation marks and citation omitted).

6    **II.    Patent Eligibility Under 35 U.S.C. § 101**

7          Section 101 of the Patent Act defines patentable subject matter as "any new and

8    useful process, machine, manufacture, or composition of matter, or any new and useful

9    improvement thereof."  35 U.S.C. § 101.  There are "three specific exceptions to § 101's

10   broad patent-eligibility principles: laws of nature, physical phenomena, and abstract

11   ideas." *Bilski v. Kappos*, 561 U.S. 593, 601 (2010).  These exceptions ensure "that patent

12   law not inhibit further discovery by improperly tying up the future use of these building

13   blocks of human ingenuity." *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014)

14   (internal quotation marks and citation omitted); *see also CareDx, Inc. v. Natera, Inc.*, 40

15   F.4th 1371, 1376 (Fed. Cir. 2022) ("These exceptions exist because monopolizing the

16   basic tools of scientific work 'might tend to impede innovation more than it would tend

17   to promote it.'") (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566

18   U.S. 66, 71 (2012)).

19          "The Supreme Court has established a two-step framework for evaluating patent

20   eligibility under § 101." *Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371,

21   1377 (Fed. Cir. 2022) (citing *Alice*, 587 U.S. at 217; *Mayo*, 566 U.S. at 70–73).  Under

22   step one, the court "determine[s] whether the claim is 'directed to' a 'patent-ineligible

23   concept,' such as an abstract idea." *Coop. Ent., Inc. v. Kollective Tech., Inc.*, 50 F.4th

24   127, 130 (Fed. Cir. 2022) (quoting *Alice*, 573 U.S. at 217).  If so, the court proceeds to

25   step two and "examine[s] 'the elements of the claim to determine whether it contains an

26   "inventive concept" sufficient to "transform" the claimed abstract idea into a patent-

27

28

1  eligible application.'" *Id.* (quoting *Alice*, 573 U.S. at 221).  At step two, the court

2  determines "whether the claim elements, individually and as an ordered combination,

3  contain an inventive concept, which is more than merely implementing an abstract idea

4  using 'well-understood, routine, [and] conventional activities previously known to the

5  industry.'" *Id.* (quoting *Content Extraction & Transmission LLC v. Wells Fargo Bank,*

6  *Nat'l Ass'n*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014)).

7         "Patent eligibility under § 101 is a question of law that may contain underlying

8  issues of fact." *CardioNet, LLC v. InfoBionic, Inc*, 955 F.3d 1358, 1367 (Fed. Cir. 2020).

9  "Thus, patent eligibility may be resolved at the Rule 12 stage only if there are no

10 plausible factual disputes after drawing all reasonable inferences from the intrinsic and

11 Rule 12 record in favor of the non-movant." *Coop. Ent.*, 50 F.4th at 130.  Indeed, the

12 Federal Circuit has "repeatedly recognized that in many cases it is possible and proper to

13 determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion," *Genetic*

14 *Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373–74 (Fed. Cir. 2016) (citations omitted),

15 specifically "where the undisputed facts, considered under the standards required by that

16 Rule, require a holding of ineligibility under the substantive standards of law,'"

17 *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1314 (Fed. Cir. 2021) (citation

18 omitted).  "In many cases, too, evaluation of a patent claim's subject matter eligibility

19 under § 101 can proceed even before a formal claim construction."  *Genetic Techs.*, 818

20 F.3d at 1373–74 (citations omitted); *see TriDim Innovations LLC v. Amazon.com, Inc.*,

21 207 F. Supp. 3d 1073, 1078 (N.D. Cal. 2016) ("In this case, parties do not dispute the

22 proper construction of any terms in the asserted claims, and so the Court finds it

23 unnecessary to engage in claim construction before addressing the validity of the patents

24 under Section 101.").

25 / / /

26 / / /

27

28

# DISCUSSION

To prove that the claims in the Combined-Image Patents claim ineligible subject matter and are invalid under § 101, Google relies on four representative claims: independent claim 15 of the '587 Patent, independent claim 20 of the '740 Patent, independent claim 8 of the '961 Patent, and independent claim 21 of the '149 Patent (collectively, the "exemplary claims"). ECF 13 at 9. In light of this, the Court will first analyze the subject matter eligibility of these four specific claims, and the Court will then analyze whether these four claims are properly representative of the remaining claims.

## I.    *Alice* Step One

To determine whether the claims are patentable under § 101, the Court begins with *Alice* step one. "At step one, the district court evaluates whether patent claims are directed to an abstract idea." *Splunk Inc. v. Cribl, Inc.*, 662 F. Supp. 3d 1029, 1040 (N.D. Cal. 2023) (citing *Alice*, 573 U.S. at 218). The step one inquiry asks "what the patent asserts to be the focus of the claimed advance over the prior art." *Yu v. Apple Inc.*, 1 F.4th 1040, 1043 (Fed. Cir. 2021) (citation omitted). Because "[a]t some level, 'all inventions … embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas,'" *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 71), a patent is not ineligible merely "because it involves an abstract concept," *id.* (citing *Diamond v. Diehr*, 450 U.S. 175, 187 (1981)). Rather, "[if] the focus of the claim is a specific and concrete technological advance, for example an improvement to a technological process or in the underlying operation of a machine, … the claim is eligible." *Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 908 (Fed. Cir. 2022); *see also BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1287 (Fed. Cir. 2018) ("For an application of an abstract idea to satisfy step one, the claim's focus must be on something other than the abstract idea itself.").

25-cv-00221-GPC-BLM

In conducting the step one inquiry, courts "must focus on the language of the asserted claims themselves, considered in light of the specification." *Yu*, 1 F.4th at 1043 (cleaned up); *see also CardioNet*, 955 F.3d at 1371–73 ("In determining what the claims are directed to and whether they are directed to an abstract idea, a court may well consult the plain claim language, written description, and prosecution history.").  Further, courts must "be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims." *Id.* at 1371; *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016) ("describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule").

In its motion to dismiss, Google contends that the exemplary claims "are directed to the abstract idea of combining images to enhance each other," and that the claims are not directed to "any improvement in digital camera functionality."  ECF No. 13 at 15–19.  CIR argues that Google oversimplifies the exemplary claims and fails to instead consider them "as a whole"—an inquiry that would reveal that the claims "resolve technological problems related to reducing unwanted blur in a main subject when capturing images or video with a digital camera."  ECF No. 20 at 15–23.

The Federal Circuit's decision in *Yu v. Apple Inc.*, 1 F.4th 1040 (Fed. Cir. 2021), is instructive here.  In *Yu*, the Federal Circuit recognized that "the idea and practice of using multiple pictures to enhance each other has been known by photographers for over a century," and that this idea is abstract.  *Id.* at 1043.  In *Yu*, the claim at issue recited a digital camera, comprising "(1) a first and a second image sensor closely positioned with respect to a common plane … (2) two lenses … (3) said first image sensor producing a first image and said second image sensor producing a second image … (4) an analog-to-digital converting circuitry coupled to said first and said second image sensor … (5) an image memory … and (6) a digital image processor ... ***producing a resultant digital***

*image from said first digital image enhanced with said second digital image*." *Id.* at 1042 (emphasis added).  The claim at issue in *Yu* is substantially similar to the exemplary claims at issue in this case.

For example, independent claim 20 of the '740 patent recites:

- "[A] user interface configured to display an image" that "includes a first subject and a second subject";
- "[A] processor configured to receive user input designating the first subject … to be kept blur free";
- "[A] memory configured to store" the images, which "include the first subject and the second subject";
- A processor "configured  to combine" the images so that "the combined image includes the first subject and the second subject," with the first subject being "blur free" and the second subject being comparatively "blurred";
- A user interface "configured to display the combined image"; and
- "[A] memory configured to store the combined image."

ECF No. 1-25 at 20.

Thus, the Federal Circuit's decision in *Yu* supports the conclusion that the exemplary claims are similarly directed to the abstract idea of combining pictures to enhance each other.  *Enfish*, 822 F.3d at 1334 (finding that it is "sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases"); *see also Alice*, 573 U.S. at 221 ("In any event, we need not labor to delimit the precise contours of the 'abstract ideas' category in this case. It is enough to recognize that there is no meaningful distinction between the concept of risk hedging in *Bilski* and the concept of intermediated settlement at issue here.").

In addition to finding the idea of combining pictures to enhance each other to be abstract, the *Yu* court rejected plaintiff's argument that the claim was directed to a patent-

9

1    eligible application of that idea. *Yu*, 1 F.4th at 1043–45. The Federal Circuit reasoned

2    that the claim recited "only conventional camera components … perform[ing] only their

3    basic functions" "to effectuate the resulting 'enhanced' image[.]" *Id.* Therefore, the

4    claim "is simply a generic environment in which to carry out the abstract idea." *Id.* As

5    shown above, independent claim 20 of the '740 Patent merely recites conventional digital

6    camera components (such as a user interface, processor, and memory) performing basic

7    functions to achieve the combined blur/blur free image. *See* '740 Patent at 14:33-52.

8    Similarly, independent claim 8 of the '961 Patent and independent claim 21 of the '149

9    Patent merely recite conventional digital camera components (such as a user interface,

10   lens, image sensor, processor, and memory) performing basic functions to achieve the

11   combined blur/blur free image or video. *See* '149 Patent at 15:28-16:5; '961 Patent at

12   13:34-61. Under *Yu*, these claims are directed to an abstract idea because they simply

13   provide a "generic environment in which to carry out the abstract idea" of combining

14   images (one blurred and one blur free). *Yu*, 1 F.4th at 1043 (citation omitted).

15       CIR does not dispute that the exemplary claims are directed to the abstract idea of

16   combining pictures to enhance each other. Rather, CIR argues that Google's analysis

17   ignores other key aspects of the exemplary claims which show that the claims are

18   directed to patentable subject matter. ECF No. 20 at 16–23. For instance, CIR argues

19   that the '587 patent "is directed to an improved imaging apparatus that captures a

20   plurality of photographic images, accepts user input to designate a main subject, and

21   combines the images to generate a corrected image (*i.e.*, one that is blur free) based on a

22   pixel-by-pixel determination of each image point in the designated main subject."[3] *Id.* at

23

24   _____

25   [3] In making this point, and throughout its analysis, CIR discusses claims from the asserted patents which
     Google does not analyze as "exemplary claims" in its motion to dismiss. *See, e.g.*, ECF No. 20 at 17

26   (discussing '587 patent claim 23). For efficiency, and for reasons further discussed *supra* Discussion
     Section III, the Court will focus its analysis on the exemplary claims only.

27

28

16–17.  And CIR argues that the '740, '149, and '961 Patents are directed to improved devices that capture multiple images and combines them into a final image "where the subject is blur-free or sharp and the background is blurred, such as based on 'pixel values' of the main subject or by first 'aligning' the main subject prior to combining." ECF No. 20 at 19.  The problem with CIR's arguments, however, is that the exemplary claims are not limited to these advancements, nor are they limited in any meaningful way at all.

For example, the limitations in independent claim 20 of the '740 Patent, independent claim 8 of the '961 Patent, and independent claim 21 of the '149 Patent say little by way of specifically *how* the claim arrives at the blur free image or video.  *See* '740 Patent at 14:33-52; '149 Patent at 15:28-16:5; '961 Patent at 13:34-61.  Moreover, the claims say nothing about pixel values or alignment of the main subject prior to combining.  Those limitations are simply not in the claims.  *See id.*  Instead of describing a specific method for arriving at the end result, the claims merely describe using a digital camera with conventional components to combine images and arrive at a final, blur free image or video.  Such results-oriented claims are insufficient under *Alice* step one.

Independent claim 15 of the '587 Patent similarly fails to provide any meaningful limitations.  *See* '587 Patent at 13:24-36.  While the claim states that a "processor determines, for each image point in the main subject of the corrected image, a pixel value for the image point based on pixel values in the plurality of photographic images at the same image point," it still fails to explain how the processor makes this determination.  Without more than this results-oriented language, the claim does not recite more than the abstract idea itself.  *See Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280. 1292–93 (Fed. Cir. 2024) (finding that claims "directed to the abstract idea of receiving information, associating information with images, comparing the images, and presenting information based on that comparison … consist[ed] solely of result-oriented, functional

1    language and omit[ted] any specific requirements as to how these steps of information

2    manipulation are performed"); *Longitude Licensing Ltd. v. Google LLC*, No. 2024-1202,

3    2025 WL 1249136, at *2–3 (Fed. Cir. Apr. 30, 2025) (finding that claim directed to "the

4    abstract idea of 'improving image quality by adjusting various aspects of an image based

5    on features of the main object in the image'" failed at step one because it merely

6    "functionally describes a mere concept without disclosing how to implement that

7    concept") (citation omitted).

8         To combat this line of reasoning, CIR invokes the specification's teachings.  CIR

9    notes, for instance, that the specification teaches that "the camera combines the images

10   into a single image by aligning them such that each pixel corresponding to the same

11   image point in each image is combined pixel-by-pixel into one pixel by adding pixel

12   values, averaging them, or using any other appropriate operation to combine them." '587

13   patent at 9:65-10:03.  However, "[w]hile step one requires that 'we consider the claims in

14   light of the specification, we avoid importing concepts from the specification into the

15   claims." *Longitude Licensing*, 2025 WL 1249136, at *4; *see also Am. Axle & Mfg., Inc.

16   *v. Neapco Holdings LLC*, 967 FF.3d 1285, 1293 (Fed. Cir. 2020) ("features that are not

17   claimed are irrelevant as to step 1 or step 2"); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315,

18   1327 (Fed. Cir. 2012) ("[I]t is improper to read limitations from a preferred embodiment

19   described in the specification—even if it is the only embodiment—into the claims absent

20   a clear indication in the intrinsic record that the patentee intended the claims to be so

21   limited.").  Here, the exemplary claims are not limited to the specification's teachings

22   regarding pixel value shifting.  Further, the specification's teachings regarding pixel

23   value shifting merely describe a preferred embodiment of the claimed invention.  *See*

24   '587 Patent at 9:54-55 ("This third embodiment . . . .").  The exemplary claims are much

25   broader than this preferred embodiment: they claim the entire abstract idea of combining

26   images with a digital camera.  *See ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759,

27

28

12

766 (Fed. Cir. 2019) (explaining that reliance on the specification "must always yield to the claim language in identifying th[e] focus" of the claims).[4]

The exemplary claims are not specific improvements in computer functionality, as CIR suggests, either.  Instead, they take an abstract idea and carry it out using conventional camera components, including a user interface, digital image processor, an image memory, and lenses.  *See Yu*, 1 F.4th 1043 (holding similar components to be conventional camera components).  Contrary to CIR's assertions, the exemplary claims are "directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery rather than a specific means or method that improves the relevant technology."  *Id.* (cleaned up); *see also Plotagraph, Inc v. Lightricks, Ltd.*, No. 2023-1048, 2024 WL 223185, at *4 (Fed. Cir. Jan. 22, 2024) (finding no claimed technological advance or improvement where "the claims merely employ generic computers to perform animation," an abstract idea).

CIR can find no help in its reliance on *Contour IP Holding LLC v. GoPro, Inc.*, 113 F.4th 1373 (Fed. Cir. 2024).  There, the Federal Circuit found that the representative claim of the asserted patents, which related to portable, point-of-view ("POV") video cameras, was "directed to a specific means that improves the relevant technology."  *Id.* at 1379.  Specifically, the court found that the claim "requires specific, technological means—parallel data stream recording with the low-quality recording wirelessly

---

[4] CIR also argues that the patent examiner's determination that the exemplary patents were sufficiently novel and included "uniquely distinct features" indicate that the patents are "non-abstract improvements over the prior art."  ECF No. 20 at 18–19, 22–23.  But these arguments are not persuasive because "[e]ligibility and novelty are separate inquiries."  *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1340 (Fed. Cir. 2017).  Even if the Court assumes that the claimed features are novel, that "does not avoid the problem of abstractness" that plagues the exemplary claims.  *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1263 (Fed. Cir. 2016); *see also SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed Cir 2018) ("The claims here are ineligible because their innovation is an innovation in ineligible subject matter.") (collecting cases).

transferred to a remote device—that in turn provide a technological improvement to the real time viewing capabilities of a POV camera's recordings on a remote device." *Id.* CIR contends that the exemplary claims here are similarly limited in scope such that they "do not cover other ways that a processor may remove distortion from an image." ECF No. 20 at 24–25. For two reasons, CIR's reliance on *Contour* fails. First, the court in *Contour* reasoned that *Contour* was distinct from *Yu* because, in *Yu*, there was "a longstanding, fundamental practice in photography" of using multiple pictures to enhance each other, whereas that was not the case in *Contour*. 113 F.4th at 1380. The instant case is distinct from *Contour* for the same reason: there has been a longstanding and well-known practice of combining images to enhance each other, and the exemplary claims are directed to that abstract idea. Second, the exemplary claims are much closer in scope to the analogous claims in *Yu* than the specific claims in *Contour*. While *Yu* involved similar limitations surrounding the broad idea of combining images to enhance each other, the claims in *Contour* specifically teach the use of multiple streams in parallel to enable users to view their POV recordings in real time. *Id.* at 1375–76, 1379–80.

Accordingly, Google has demonstrated that the exemplary claims are directed to an abstract idea under *Alice* step one.

## II. *Alice* Step Two

The Court now turns to *Alice* step two. Under the second step of the analysis, the Court asks "whether the claims do significantly more than simply describe the abstract method and thus transform the abstract idea into patentable subject matter." *Affinity Labs*, 838 F.3d at 1262 (cleaned up). The inventive concept "may arise in one or more of the individual claim limitations or in the ordered combination of the limitations," *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016), but it "must be evident in the claims" themselves, *RecogniCorp LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017). "It is well-settled that mere recitation of

14

concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea.  Rather, the components must involve more than performance of well-understood, routine, conventional activities previously known to the industry."  *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) (quoting *Alice*, 573 U.S. at 225) (cleaned up).

Google argues that the exemplary claims merely "recite well-known, routine, conventional components and functions," and that they apply the abstract idea itself, which is insufficient to provide an inventive concept.  ECF No. 13 at 19–24.  CIR responds that an ordered combination of the claims "recite[s] new digital imagine devices that are capable of blur correction and selection of a subject for blur correction."  ECF No. 20 at 25–27.  CIR further contends that Google has not demonstrated that the components "were in fact well-known, routine, and conventional" as of the priority date. *Id.* at 26–28.  On reply, Google responds that CIR relies on steps that the exemplary claims do not recite and benefits that the claims do not require.  ECF No. 21 at 6–9.

The exemplary claims merely recite concrete, tangible components to implement the abstract idea with well-understood, conventional activities.  The Federal Circuit's reasoning in *Yu* is directly applicable here.  There, the court found that "two image sensors, two lenses, …an image memory, and a digital imaging processor" were "well-known" and "conventional camera components."  1 F.4th at 1043.  And the court further reasoned that the patent in suit merely recited these components performing "basic functions … at a high level of generality," such as image sensors producing images and an image memory storing digital images.  Similarly, here, the claims recite substantially similar, if not the same, conventional camera components, including a digital "camera,"[5]

---

[5] In addition to the digital camera, other claimed conventional apparatuses include an "imaging apparatus for capturing digital video," ('961 patent claim 8), an "imaging device," ('740 patent claim

a "lens," an "image sensor," a "processor," a "memory," a "user interface," and a "viewfinder."  *See* '740 Patent at 14:33-52; '149 Patent at 15:28-16:5; '961 Patent at 13:34-61; '587 Patent at 13:24-36.  What is more, the claims similarly recite these components performing their generic, well-known functions, such as:

- A "user interface … display[s] an image" and "receive[s] … user input" ('149 patent claim 21; '961 patent claim 8; '740 patent claim 20);

- A "memory" that "stor[es] digital images and … instructions" ('149 patent claim 21; '961 patent claim 8; '740 patent claim 20);

- A "processor" that "receiv[es] user input," ('740 patent claim 20), and "execut[es]" instructions, ('149 patent claim 21; '961 patent claim 8), such as by combining images to "generate a final image," ('149 patent claim 21; '961 patent claim 8; '740 patent claim 20; '587 patent claim 15); and

- A "camera" or "imaging apparatus" with an "image sensor" and "lens" which, together, "captur[e] digital images," ('149 patent claim 21), or "captur[e] a sequence of images," ('961 patent claim 8).

Because the limitations at issue here do nothing beyond reciting conventional hardware performing basic functions at a high level of generality, *Alice* step two cannot save the claims.  *See, e.g.*, *In re Bd. of Trs. of Leland Stanford Junior Univ.*, 991 F.3d 1245, 1252 (Fed. Cir. 2021) ("it is hard to imagine a patent claim that recites hardware limitations in more generic terms than" a claim that "recit[es] method steps carried out by a 'computer system' with a 'processor' and a 'memory'").

CIR argues that "Google fails to demonstrate that many of the components it deems 'generic' and 'routine' were in fact well-known, routine, and conventional as of

---

20), and a photographic "apparatus" with "a recording medium configured to capture … photographic images," ('587 patent claim 15).

the March 2004/2005 priority date." ECF No. 20 at 27–28. CIR does not cite any case law that mandates such a showing as of the priority date. Nonetheless, the Federal Circuit's decision in *Yu* forecloses CIR's premise. There, the patent in suit was issued to Yu on August 26, 2003. *Yu v. Apple Inc.*, 611 F. Supp. 3d 908, 911 (N.D. Cal. 2020), *aff'd*, 1 F.4th at 1040. Thus, the Federal Circuit found similar components to be well-known and conventional when considering a patent that was issued before the priority date for the instant patent in suit. CIR's argument therefore fails as a matter of law.

Finally, CIR argues that the claims, when "considered as an ordered combination, … recite new digital imaging devices that are capable of blur correction and selection of a subject for blur correction"—a tangible improvement beyond just applying the abstract idea. ECF No. 20 at 26–27. But the claims are much broader than the ordered combination that CIR suggests. CIR suggests that the claimed combination "record[s] a burst of images, determin[es] the main subject of each image, align[s] the main subject of each image of the burst on a pixel-by-pixel basis, combin[es] the pixel values, and thereby achiev[es] a blur-free image of the main subject." *Id.* But, as explained above, none of the exemplary claims actually include that specific ordered combination. None of the exemplary claims include the limitation of aligning the main subject on a pixel-by-pixel basis. "The main problem that [CIR] cannot overcome is that the *claim*—as opposed to something purportedly described in the specification—is missing an inventive concept." *Two-Way Media*, 874 F.3d at 1338; *Yu*, 1 F.4th at 1045.

For this same reason, CIR's appeal to an "improvement" in "terms of signal-to-noise power ratio (SNR)" in the final, combined image fails. ECF No. 20 at 27. Again, the exemplary claims do not include a limitation requiring an improved signal-to-noise ratio. Instead, the specification discusses signal-to-noise ratios only in the context of a "third embodiment," which addresses the specific problem of fast shutter speed reducing the ratio, and how a combination of multiple images can overcome this problem and

increase the ratio.  *See* '740 Patent at 9:49–10:54.  Whether this improvement in signal-to-noise power ratio is sufficient under step two—a determination the Court does not make here—is immaterial because the claims do not say anything about signal-to-noise power ratio.  In fact, as previously mentioned, the claims are so broad that they merely apply the abstract idea of combining images to enhance each other.  *See Two-Way Media*, 874 F.3d at 1338; *Yu*, 1 F.4th at 1045.

Accordingly, there is no inventive concept in the exemplary claims that saves the claims at step two.  The exemplary claims are therefore not patent-eligible under *Alice*.

### III.  Representativeness

Google argues that the exemplary claims are representative of all the claims in the Combined-Image Patents.  ECF No. 13 at 25–27.  "Limiting the analysis of a § 101 challenge to representative claims is proper when the claims at issue are substantially similar and linked to the same ineligible concept."  *Mobile Acuity*, 110 F.4th at 1290 (internal quotation marks and citation omitted).  Thus, a court may treat claims as representative where "the patentee does not present any meaningful argument for the distinctive significance of any claim limitation not found in the representative claim or if the parties agree to treat a claim as representative."  *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) (citations omitted).

Where representativeness is disputed, the patent challenger "bears the initial burden to make a prima facie showing that the group of claims are substantially similar and linked to the same ineligible concept."  *Mobile Acuity*, 110 F.4th at 1290 (internal quotation marks and citation omitted).  If the patent challenger makes the required showing, "the burden shifts to the patent owner to present non-frivolous arguments as to why the eligibility of the identified representative claim cannot fairly be treated as" representative, such as by "articulat[ing] why a claim limitation not found in the representative claim has 'distinctive significance' that would have a material impact on

25-cv-00221-GPC-BLM

the eligibility analysis." *Id.* (quoting *Berkheimer*, 881 F.3d at 1365).  If the patent owner successfully presents non-frivolous arguments against representativeness, the patent challenger bears the ultimate burden "to prove either that (i) the representative claim is, in fact, representative, in that any differences among the claims are not material to the eligibility analysis …; or (ii) each separate claim … is ineligible for patenting." *Id.* at 1291.[6]

The Court must first address whether Google has made prima facie showing of representativeness.  Google argues that each of the claims in the four Combined-Image Patents are substantially similar and linked to the same abstract concept, and that any differences CIR identifies in the claims are immaterial to the § 101 analysis under *Alice*.  ECF No. 13 at 25–27.  Indeed, Google is correct that many of the claims recite either the same process or an apparatus with substantially similar features as the exemplary claim.  *See* '740 Patent claims 1, 10; 961 Patent claims 1, 15; '149 Patent claims 1, 11; '587 Patent claims 1, 8, 23.  These claims merely recite the same abstract idea of combining images to enhance one another using conventional digital camera components performing their basic functions.  *See Mobile Acuity*, 110 F.4th at 1291 (finding other claims substantially similar where they merely added conventional components or conventional computer activities and were still directed to the same abstract idea).

Further, both parties' briefs identify differences between the exemplary claims and other claims, but these are not differences that are substantial enough to divorce them

---

[6] CIR relies heavily on *PPS Data, LLC v. Jack Henry & Associates, Inc.*, 404 F. Supp. 3d 1021 (E.D. Tex. 2019), to argue that treating claims as representative is not favorable.  ECF No. 20 at 10–12.  But, aside from the fact that this out-of-district case is not binding on the Court, CIR ignores that *PPS* applied the same burden-shifting framework that the Court applies below.  What is more, the Federal Circuit has never expressed a similar discontent with treating one or a few claims as representative for *Alice* purposes.  In fact, the Federal Circuit often treats one or a few claims as representative when appropriate.  *See, e.g., Mobile Acuity*, 110 F.4th at 1290–92; *Longitude Licensing*, 2025 WL 1249136, at *4 (treating one claim as representative of 66 claims).

from the underlying abstract concept.  *See, e.g.*, '740 Patent claim 11 (adding a second memory); '740 Patent claims 1, 4, 12, 14 21–22, 24 (describing different end products, such as multiple images or specific blur qualities); '149 Patent claims 6, 10, 16, 20, 26, 30 (same); '961 Patent claims 6, 16, 19 (same).  While adding a second memory slightly changes the claimed process, it is not a limitation that changes the fact that the claim is directed to an abstract idea.  And a result of multiple images or specific blur qualities does not change the fact that the result was reached by combining images to enhance one another.  Therefore, CIR's arguments as to many of the identified differences fail.

The closest CIR comes to identifying materially different claims is its mention of claims that are limited to the relative shift and alignment of pixels between multiple images.  Specifically, several claims in the Combined-Image Patents include limitations regarding a processor that "takes into account a relative shift between the sequence of digital images" to either "designate[]" a subject and background or generate the final image.  *See, e.g.,* '149 Patent claims 3–4, 8, 13–14, 18, 23–24, 28.  The specification teaches that taking this shift into account assists with the alignment of pixels in the final combined image.  *See* '149 Patent at 11:28–11:45.  The claims recite the alignment of multiple images to arrive at a final enhanced image.  Despite this more specific limitation, the claims are still directed to the same abstract idea of combining images to enhance each other.  And, in a similar context, the Federal Circuit has held that shifting pixels to change the appearance of the final image, such as by creating the appearance of movement (*i.e.*, animation), "is clearly an abstract idea." *Plotagraph*, 2024 WL 223185, at *3.  While CIR argues that *Plotagraph* is inapposite because "'animation' is not relevant to the claims at issue here," ECF No. 20 at 13 n.5, this conclusory argument fails because it ignores that the claims in *Plotagraph* and the claims at issue here both deal with combining images to reach a desired result.  Therefore, CIR fails to show that the

1  claims have a distinctive significance from the exemplary claims that would have a

2  material impact on the eligibility analysis.

3       Accordingly, Google has met its burden to show that the exemplary claims are

4  representative of all other claims in the Combined-Image Patents.

5  **IV.   Leave to Amend**

6       CIR requests leave to amend the complaint to address any factual shortcomings in the

7  *Alice* step two analysis.  ECF No. 20 at 28–29.

8       Where a motion to dismiss is granted, "leave to amend should be granted 'unless

9  the court determines that the allegation of other facts consistent with the challenged

10  pleading could not possibly cure the deficiency.'"  *DeSoto v. Yellow Freight Sys., Inc.,*

11  957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture*

12  *Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986)).  In other words, where leave to amend would

13  be futile, the Court may deny leave to amend.  *See DeSoto,* 957 F.2d at 658; *Schreiber,*

14  806 F.2d at 1401.

15       CIR seeks leave to amend for three reasons: (1) to supplement its allegations

16  regarding the state of the art as of the priority date; (2) to supplement its allegations

17  regarding "the inventive concepts embodied by specific claim limitations"; and (3) to

18  address the benefits of the Combined-Image Patents' technical advances in order to show

19  that the inventions were not "well-understood, routine, and conventional."  ECF No. 20 at

20  29.  However, as the Court discussed, *supra* Discussion Section II, the Federal Circuit's

21  decision in *Yu* forecloses (1) and (3) as a matter of law.  There, the court found that

22  claims similarly directed at the abstract idea of combining images to enhance each other

23  failed at step two because they relied on similar conventional components that were

24  "well-understood, routine, [and] conventional."  110 F.4th at 1043, 1045.  Notably, the

25  patent at issue in *Yu* was issued before the priority date of the Combined-Image Patents

26  here.  *Yu*, 611 F. Supp. 3d at 911, *aff'd*, 1 F.4th at 1040.  Thus, CIR's proposed

27

28

amendments that fall under (1) and (3) would be futile, because *Yu* forecloses CIR's arguments.

Moreover, amendments regarding the purported inventive concepts of the exemplary claims would be futile too. Plaintiff cannot cure the deficiency in the exemplary claims with factual allegations because the claims, as written, do not support any possible finding that they supply an inventive concept. As the Court found, the claims are too broad and lack any meaningful limitations that would lead to a finding that they supply any inventive concept beyond the abstract idea itself. *See Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 706 (Fed. Cir. 2023) ("No amendment to a complaint can alter what a patent itself states."); *Semiconductor Design Techs., LLC v. Cadence Design Sys., Inc.*, 735 F. Supp. 3d 1162, 1169 (N.D. Cal. 2024) ("No amendment to the FAC would cure the validity problems with the underlying patents.").

At the hearing on the motion, CIR requested leave to amend the complaint to narrow its claims regarding the Combined-Image Patents to "just the [five] claims from each patent that are specifically written to the third embodiment." ECF No. 25 at 12:7– 12:13. CIR did not make this request in its briefing, *see* ECF No. 20 at 28–29 (absence),[7] and it is not clear which five claims it was referring to at the hearing. The Court deduces that CIR is referring to the claims regarding a processor that "takes into account a relative shift between the sequence of digital images" to either "designate[]" a subject and background or generate the final image, *see, e.g.,* '149 Patent claims 3–4, 8, 13–14, 18, 23–24, 28, which assists with aligning pixels in the final combined image, *see* '149 Patent at 11:28–11:45. In other words, these are the dependent claims that focus on "pixel shifting."

---

[7] While "the Court need not consider an issue raised for the first time at oral argument," *Rice Corp. v. Grain Bd. of Iraq*, 582 F. Supp. 2d 1309, 1313 (E.D. Cal. 2008), the Court will address Plaintiff's request here in the interests of judicial economy.

1    The Court declines to grant CIR the leave to amend it requested at the hearing.  As
2  the Court discussed *supra*, Discussion Section III, the Federal Circuit has held that
3  shifting pixels to change the appearance of the final image, such as by creating the
4  appearance of movement (*i.e.*, animation), "is clearly an abstract idea."  *Plotagraph*, 2024
5  WL 223185, at *3; *see also id.* at *4 (finding no claimed technological advance or
6  improvement where "the claims merely employ generic computers to perform
7  animation," an abstract idea).  For this reason, the Court found the exemplary claims to
8  be representative of the claims that are limited to "pixel shifting."  For the same reason,
9  limiting the complaint to these claims would not change the Court's conclusion under §
10 101.  Thus, amendment to limit the complaint to these claims would be futile.

11    Accordingly, the Court DENIES CIR leave to amend the complaint.

## CONCLUSION

For the above reasons, the Court GRANTS Google's partial motion to dismiss without leave to amend.

**IT IS SO ORDERED.**

Dated:  July 7, 2025

Hon. Gonzalo P. Curiel
United States District Judge