1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          SOUTHERN DISTRICT OF CALIFORNIA
10
11   CLEAR IMAGING RESEARCH LLC,        Case No.: 25-cv-00221-GPC-BLM
12                        Plaintiff,
                                        **ORDER GRANTING DEFENDANT'S**
13   v.                                 **PARTIAL MOTION TO DISMISS**
14   GOOGLE LLC,
                                        **[ECF No. 31]**
15                        Defendant.
16
17          On September 2, 2025, Defendant Google LLC ("Google") filed a partial motion to
18   dismiss Plaintiff Clear Imaging Research LLC ("CIR")'s complaint pursuant to Federal
19   Rule of Civil Procedure 12(c). ECF No. 31. CIR filed a response in opposition to Google's
20   motion on October 7, 2025, ECF No. 45, to which Google replied on October 24, 2025,
21   ECF No. 46. The Court held a motion hearing on November 21, 2025. ECF No. 47. For
22   the reasons below, the Court GRANTS Google's partial motion to dismiss CIR's
23   complaint.
24   //
25   //
26
27
                                        1
28
                                                                    25-cv-00221-GPC-BLM

# BACKGROUND

On January 30, 2025, CIR filed a complaint against Google, alleging infringement of U.S. Patent Nos. 9,800,788 (the "'788 Patent"), 9,860,450 (the "'450 Patent"), 9,013,587 (the "'587 Patent"), 11,595,583 (the "'583 Patent"), 10,171,740 (the "'740 Patent"), 11,165,961 (the "'961 Patent"), and 11,457,149 (the "'149 Patent") (collectively, the "asserted patents"). ECF No. 1. Specifically, CIR alleges that Google has infringed the asserted patents by utilizing CIR's digital camera technology in numerous Google products, specifically Google Pixel smartphones. ECF No. 1, ¶¶ 9-18, 22-98. CIR further alleges that Google induces infringement of the claims of the asserted patents by "encourag[ing] and instruct[ing] its customers and end users" to use its products "in ways that directly infringe" the asserted patents. *Id.* ¶¶ 27, 38, 49, 60, 71, 82, 93.

This Court previously dismissed Plaintiff's claims as to the '587 Patent, the '740 Patent, the '961 Patent, and the '149 Patent—collectively, the "Combined-Image Patents"—on the grounds that the Combined-Image Patents claimed patent-ineligible subject matter, and, therefore, were invalid under 35 U.S.C. § 101. *See* ECF No. 26.

The three remaining patents—the '583 Patent entitled "method and apparatus for capturing digital video," ECF No. 1-23; the '450 Patent entitled "method and apparatus to correct digital video to counteract effect of camera shake," ECF No. 1-15; and the '788 Patent entitled "method and apparatus for using motion information and image date to correct blurred images," ECF No. 1-11—share the same specification. *See,* ECF No. 1-11 ('788 Patent), at 14-19; ECF No. 1-23 ('583 Patent), at 15-20; ECF No. 1-15 ('450 Patent), at 13-18. The invention disclosed in the shared specification "processes image data in order to correct an image for distortion caused by imager movement or by movement of the subject being imaged." ECF No. 1-11, at 2:34-36; *see also id.* at 1:28-32 ("More specifically, this invention relates to processing of digitized image data in order to correct

for image distortion caused by relative motion between the imaging device and the Subject at the time of image capture, or by optical distortion from other sources.").

On September 2, 2025, Google moved to dismiss additional parts of CIR's complaint pursuant to Rule 12(c). ECF No. 31. Specifically, Google argues that CIR cannot allege claims for infringement of the '583 and '788 patents (combined, the "Pixel-Shifting Patents") because all the claims in the Pixel-Shifting Patents claim patent-ineligible subject matter, and, therefore, are invalid under 35 U.S.C. § 101. *See generally* ECF No. 31.

## LEGAL STANDARDS

### I.    Rule 12(c)

Ninth Circuit procedural law for Rule 12(c) motions applies here. *Imation Corp. v. Koninklijke Philips Electronics N.V.*, 586 F.3d 980, 984 (Fed. Cir. 2009) ("In reviewing a grant of judgment on the pleadings, this court applies the procedural law of the regional circuit."). "In the Ninth Circuit, a 'motion for judgment on the pleadings faces the same test as a motion under Rule 12(b)(6).'" *W. View Rsch., LLC v. Bayerische Motoren Werke AG*, 226 F. Supp. 3d 1071, 1076 (S.D. Cal. 2016) (quoting *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988)); *see also Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (noting that Rule 12(c) and Rule 12(b)(6) are "functionally identical" and the same standard of review applies to motions brought under either rule). Thus, under Rule 12(c), a complaint "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047 (9th Cir. 2011) (applying the *Iqbal* standard of review to Rule 12(c) motions). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

25-cv-00221-GPC-BLM

When reviewing a Rule 12(c) motion, the court accepts all facts alleged in the complaint as true and draws all reasonable inferences in favor of the non-moving party. *Chubb Custom Inc. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013). Although a court generally may not consider evidence outside the pleadings in reviewing a Rule 12(c) motion, it may properly consider "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice[.]" *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see also Yang v. Dar Al-Handash Consultants*, 250 F. App'x 771, 772 (9th Cir. 2007). In the realm of patents, "a court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit, such as the claims and patent specification." *Secured Mail Sols., LLC v. Universal Wilde*, 873 F.3d 905, 913 (Fed. Cir. 2017) (internal quotation marks and citation omitted).

## II.    Patent Eligibility Under 35 U.S.C. § 101

Section 101 of the Patent Act defines patentable subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. There are "three specific exceptions to § 101's broad patent-eligibility principles: laws of nature, physical phenomena, and abstract ideas." *Bilski v. Kappos*, 561 U.S. 593, 601 (2010). These exceptions ensure "that patent law not inhibit further discovery by improperly tying up the future use of these building blocks of human ingenuity." *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (internal quotation marks and citation omitted); *see also CareDx, Inc. v. Natera, Inc.*, 40 F.4th 1371, 1376 (Fed. Cir. 2022) ("These exceptions exist because monopolizing the basic tools of scientific work 'might tend to impede innovation more than it would tend to promote it.'") (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 71 (2012)).

"The Supreme Court has established a two-step framework for evaluating patent eligibility under § 101." *Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1377

1   (Fed. Cir. 2022) (citing *Alice*, 587 U.S. at 217; *Mayo*, 566 U.S. at 70–73). Under step one,

2   the court "determine[s] whether the claim is 'directed to' a 'patent-ineligible concept,' such

3   as an abstract idea." *Coop. Ent., Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 130 (Fed. Cir.

4   2022) (quoting *Alice*, 573 U.S. at 217). If so, the court proceeds to step two and "examine[s]

5   'the elements of the claim to determine whether it contains an "inventive concept"

6   sufficient to "transform" the claimed abstract idea into a patent-eligible application.'" *Id.*

7   (quoting *Alice*, 573 U.S. at 221). At step two, the court determines "whether the claim

8   elements, individually and as an ordered combination, contain an inventive concept, which

9   is more than merely implementing an abstract idea using 'well-understood, routine, [and]

10  conventional activities previously known to the industry.'" *Id.* (quoting *Content Extraction*

11  *& Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347–48 (Fed. Cir.

12  2014)).

13          "Patent eligibility under § 101 is a question of law that may contain underlying issues

14  of fact." *CardioNet, LLC v. InfoBionic, Inc*, 955 F.3d 1358, 1367 (Fed. Cir. 2020). "Thus,

15  patent eligibility may be resolved at the Rule 12 stage only if there are no plausible factual

16  disputes after drawing all reasonable inferences from the intrinsic and Rule 12 record in

17  favor of the non-movant." *Coop. Ent.*, 50 F.4th at 130. Indeed, the Federal Circuit has

18  "repeatedly recognized that in many cases it is possible and proper to determine patent

19  eligibility under 35 U.S.C. § 101" at the Rule 12 stage, *Genetic Techs. Ltd. v. Merial L.L.C.*,

20  818 F.3d 1369, 1373–74 (Fed. Cir. 2016) (citations omitted), specifically "where the

21  undisputed facts, considered under the standards required by that Rule, require a holding

22  of ineligibility under the substantive standards of law,'" *PersonalWeb Techs. LLC v.*

23  *Google LLC*, 8 F.4th 1310, 1314 (Fed. Cir. 2021) (citation omitted); *see also W. View*

24  *Rsch., LLC*, 226 F. Supp. 3d at 1076 (finding patent ineligible on Rule 12(c) motion). "In

25  many cases, too, evaluation of a patent claim's subject matter eligibility under § 101 can

26  proceed even before a formal claim construction." *Genetic Techs.*, 818 F.3d at 1373–74

27

28

(citations omitted); *see TriDim Innovations LLC v. Amazon.com, Inc.*, 207 F. Supp. 3d 1073, 1078 (N.D. Cal. 2016) ("In this case, parties do not dispute the proper construction of any terms in the asserted claims, and so the Court finds it unnecessary to engage in claim construction before addressing the validity of the patents under Section 101.").

## DISCUSSION

To prove that the claims in the Pixel-Shifting Patents claim ineligible subject matter and are invalid under § 101, Google relies on two representative claims: independent claim 15 of the '583 Patent, and independent claim 8 of the '788 Patent (together, the "exemplary claims"). ECF 31, at 12. As it did in reviewing the eligibility of the Combined-Image Patents, the Court will first analyze the subject matter eligibility of the two specific exemplary claims and then assess whether the two claims are properly representative of the remaining claims.

### I.    *Alice* Step One

To determine whether the claims are patentable under § 101, the Court begins with *Alice* step one. "At step one, the district court evaluates whether patent claims are directed to an abstract idea." *Splunk Inc. v. Cribl, Inc.*, 662 F. Supp. 3d 1029, 1040 (N.D. Cal. 2023) (citing *Alice*, 573 U.S. at 218). The step one inquiry asks "what the patent asserts to be the focus of the claimed advance over the prior art." *Yu v. Apple Inc.*, 1 F.4th 1040, 1043 (Fed. Cir. 2021) (citation omitted). Because "[a]t some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas," *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 71), a patent is not ineligible merely "because it involves an abstract concept," *id.* (citing *Diamond v. Diehr*, 450 U.S. 175, 187 (1981)). Rather, "[if] the focus of the claim is a specific and concrete technological advance, for example an improvement to a technological process or in the underlying operation of a machine, . . . the claim is eligible." *Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 908 (Fed. Cir. 2022); *see also BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1287 (Fed.

Cir. 2018) ("For an application of an abstract idea to satisfy step one, the claim's focus must be on something other than the abstract idea itself."); *Contour IP Holding LLC v. GoPro, Inc.*, 113 F.4th 1373, 1379 (Fed. Cir. 2024) ("[In *Alice* step one], we look to whether the claims are directed to a specific means or method that improves the relevant technology rather than simply being directed to a result or effect that itself is the abstract idea." (internal quotation marks and citations omitted)).

In conducting the step one inquiry, courts "must focus on the language of the asserted claims themselves, considered in light of the specification." *Yu*, 1 F.4th at 1043 (cleaned up). Further, courts must "be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims." *Id.* at 1371; *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016) ("describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule").

**A. The '788 Patent**

Independent claim 8 of the '788 Patent reads as follows:

A device for capturing stabilized video, comprising:

> a display configured to display a preview of a subject within field of view of the device;

> a lens and an image sensor configured to capture a video of the subject, wherein the video is a sequence of images; and

> a processor configured to:

>> detect the subject in one or more images of the sequence of images and determine a location of the subject within the images;

>> shift the one or more images vertically and horizontally by an integer number of pixels to obtain corrected images, wherein the amount of vertical and horizontal shift for each of the one or

more images is determined at least in part based on the location of the subject in the image; and

combine the corrected images to obtain a stabilized video; and

the display further configured to display the stabilized video.

ECF No. 1-11, at 20.

In its motion to dismiss, Google contends that the claims in the '788 Patent "are directed to the abstract idea of combining images to enhance each other and do not claim an element or combination of elements amounting to significantly more than the abstract idea." ECF No. 31, at 14. Rather, Google alleges that the claims simply articulate the abstract idea through pixel shifting, "which is simply a variant of the abstract idea." *Id.* In response, CIR argues that Google oversimplifies the invention, ECF No. 45, at 17, and that the '788 Patent "provides a specific technique for achieving a specific result—a stabilized video." ECF No. 45, at 18.

In finding CIR's Combined-Image Patents ineligible, the Court relied on the Federal Circuit's decision in *Yu v. Apple Inc.*, 1 F.4th 1040 (Fed. Cir. 2021). In *Yu*, the Federal Circuit recognized that "the idea and practice of using multiple pictures to enhance each other has been known by photographers for over a century," and that this idea is abstract. *Id.* at 1043. The Court further noted that the claim in *Yu* bore notable similarities to those in the Combined-Image Patents. This remains true here. The claims in *Yu* described a digital camera—containing two lenses, an image sensor, a memory, and a digital image processor—which produced two images and then used "a digital image processor . . . producing a resultant digital image from said first digital image enhanced with said second digital image." *Id.* at 1042. That claim from *Yu* is similar to exemplary claim 8, which encompasses a video recording device—containing a lens, image sensor, and processor—which captures a video "wherein the video is a sequence of images," and employs a "processor configured to detect the subject in one or more images . . . shift the one or more

8

1    images . . . and combine the corrected images to obtain a stabilized video." ECF No. 1-11,

2    at 20.

3        Also relevant to the issue before the Court is the Federal Circuit's decision in

4    *Plotagraph, Inc. v. Lightricks, Ltd.* No. 2023-1048, 2024 WL 223185 (Fed. Cir. Jan. 22,

5    2024). In *Plotagraph* the Federal Circuit held that "shifting pixels to create the illusion of

6    movement within an image is a digital version of animation, which is an abstract idea." *Id.*

7    at *3. The *Plotagraph* court noted that the fact that the image components being moved

8    were pixels did not render the claim any less abstract. *Id.* at *4. The reasoning of

9    *Plotagraph* indicates that shifting images by a number of pixels to achieve a desired result

10   is itself an abstract idea. Thus, any patent-eligible application of that idea must include a

11   "technological advance or improvement to computer functionality," rather than employing

12   generic technology. *Id.* The claim in *Plotagraph* recited a "computer program" including

13   a "processor" to "perform a method for automating a shifting of pixels within an image

14   file," which involved "selecting the first set of pixels" and "shifting the first set of

15   pixels . . . in the first direction." *Id.* at *2. This bears notable similarities to exemplary claim

16   8 which refers to a "processor" configured to "shift the one or more images vertically and

17   horizontally by an integer number of pixels" in order to obtain a stabilized video. ECF No.

18   1-11, at 20.

19       Thus, the Federal Circuit's decisions in both *Yu* and *Plotagraph*—and the

20   similarities between exemplary claim 8 and the claims contained therein—support the

21   conclusion that the claim 8 of the '788 Patent is directed to the abstract ideas of combining

22   images to enhance one another and shifting images by a pixel amount to achieve a desired

23   result. *Enfish*, 822 F.3d at 1334 (finding that it is "sufficient to compare claims at issue to

24   those claims already found to be directed to an abstract idea in previous cases"); *see also,*

25   *e.g.*, *Alice*, 573 U.S. at 221 ("In any event, we need not labor to delimit the precise contours

26   of the 'abstract ideas' category in this case. It is enough to recognize that there is no

27

28

1  meaningful distinction between the concept of risk hedging in *Bilski* and the concept of

2  intermediated settlement at issue here.")

3      CIR contends that the '788 Patent is not directed at the abstract idea of combining

4  images to enhance each other but, rather, at a tangible improvement in video stabilization

5  that is a specific advance in digital image and video processing. ECF No. 45, at 14.

6  However, exemplary claim 8 specifically teaches a means of "combin[ing] . . . corrected

7  images" to achieve a stabilized video. ECF No. 1-11. Thus, the Court is not convinced that,

8  as CIR alleges, "the '788 Patent does not claim using multiple pictures to enhance each

9  other." ECF No. 45, at 18 (internal quotation marks omitted). Indeed, CIR, in its briefing

10  opposing Google's motion to dismiss, notes that "the inventions take advantage of the

11  ability of an imager to record multiple images and then use specific techniques to combine

12  those images to achieve a stabilized video or image." ECF No. 45, at 8. Though the '788

13  Patent employs a specific means of combining images—shifting images by a number of

14  pixels to align subjects—this method only applies one abstract idea (combining images to

15  enhance each other) to another abstract idea (shifting images by a pixel amount to achieve

16  a desired result (a stabilized video)), which does not render a claim non-abstract. *See*

17  *RecogniCorp, LLC v. Nintendo Co*., 855 F.3d 1322, 1327 (Fed. Cir. 2017) ("Adding one

18  abstract idea (math) to another abstract idea (encoding and decoding) does not render the

19  claim non-abstract.").

20      CIR further argues that the reasoning of *Plotagraph* does not apply to the claims at

21  issue here because *Plotagraph* referred to animation, while CIR's claims involve a means

22  to reduce the appearance of motion in video. ECF No. 45, at 14-15. However, the Court is

23  unable to find a meaningful distinction between the shifting of pixels across multiple

24  images to create the appearance of movement and the shifting of pixels across multiple

25  images to reduce the appearance of movement/blur. Thus, the analysis in *Plotagraph* is

26

27                                    10

28                                                      25-cv-00221-GPC-BLM

both "applicable [and] analogous" to CIR's claims, despite CIR's contentions to the contrary. ECF No. 45. At 15.

The *Plotagraph* court further took issue with the fact that the relevant patent recited a means for "the computer [to] perform[] more efficiently what could otherwise be accomplished manually." *Plotagraph*, 2024 WL 223185, at *4. The same is true here. While tedious, looking over a series of images, detecting a specific subject, and then shifting the images vertically and horizontally so that the selected subject is aligned across the images could theoretically be done by hand, thereby further supporting the conclusion that the claims are directed towards an abstract idea. *See Trinity Info Media, LLC v. Covalent, Inc*., 72 F.4th 1355, 1361-62 (Fed. Cir. 2023) ("A telltale sign of abstraction is when the claimed functions are mental processes that can be performed in the human mind or using a pencil and paper." (internal quotation marks and citations omitted)). Though exemplary claim 8 employs a generic "processor" to perform what can be done via mental processes and by hand, but "that doesn't transfigure an idea out of the realm of abstraction." *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1316 (Fed. Cir. 2021).

Additionally, exemplary claim 8 recites no technological improvement to the claimed imaging device but, rather, recites a process that is an abstract idea that the device might implement to achieve a desired result. *See TecSec, Inc. v. Adobe Inc*., 978 F.3d 1278 (Fed. Cir. 2020) ("In cases involving software innovations, this inquiry often turns on whether the claims focus on specific asserted improvements in computer capabilities or instead on a process or system that qualifies an abstract idea for which computers are invoked merely as a tool." (internal quotation marks and citation omitted)). The "device for capturing stabilized video" and the "processor" claimed in claim 8 are "merely a conduit for the abstract idea[s]" of combining multiple images and shifting certain images by an identified number of pixels to achieve a desired result (stabilized video). *In re TLI Comms. LLC Patent Litig.*, 823 F.3d at 612. Likewise, the claimed "processor" is described only in

terms of performing generic camera functions—specifically, locating a subject without any explanation of how this is achieved, *see Longitude Licensing Ltd. v. Google LLC*, No. 2024-1202, 2025 WL 1249136, *4 (Fed. Cir. Apr. 30, 2025)—or implementing an abstract idea—specifically, shifting and combining images to obtain a stabilized video. *See also Trinity Info Media, LLC v. Covalent, Inc*., 72 F.4th 1355, 1362 (Fed. Cir. 2023) (finding that the requirement of a processor configured to apply an abstract idea does not change the focus of the asserted claims from being directed towards the abstract idea).

Claim 8 further includes no details as to how the claimed technology leads to its results. While the claim states that a processor "detect[s] the subject in one or more images," "determine[s] a location of the subject," and "shift[s] the one or more images . . . by an integer number of pixels," ECF No. 1-11, at 20, it fails to explain in any meaningful way how the processor makes such determinations. The only detail provided is that the "amount of vertical and horizontal shift . . . is determined at least in part based on the location of the subject in the image." *Id.* Without more than this results-oriented language, the claim does not recite more than the abstract idea itself. *See Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280. 1292–93 (Fed. Cir. 2024) (finding that claims "directed to the abstract idea of receiving information, associating information with images, comparing the images, and presenting information based on that comparison . . . consist[ed] solely of result-oriented, functional language and omit[ted] any specific requirements as to how these steps of information manipulation are performed"); *Longitude Licensing Ltd. v. Google LLC*, No. 2024-1202, 2025 WL 1249136, at *2–3 (Fed. Cir. Apr. 30, 2025) (finding that claim directed to "the abstract idea of 'improving image quality by adjusting various aspects of an image based on features of the main object in the image'" failed at step one because it merely "functionally describes a mere concept without disclosing how to implement that concept") (citation omitted)).

Thus, despite CIR's arguments, an "improved result, without more, is not enough to support patent edibility at *Alice* step one." *Contour IP Holding LLC v. GoPro, Inc*., 113 F.4th 1373, 1379 (Fed. Cir. 2024). The improved result set forth by CIR is a stabilized video, which CIR alleges to achieve, not through a "specific means or method that improves the relevant technology," but through the application of an abstract idea. *Id.* (quoting *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016)). Though CIR argues that calculation and implementation of the vertical and horizontal shifting to align pixels is itself specific means that improves relevant technology, the exemplary claim itself reveals no such technological advance. Even so, "adding one abstract idea (math) to another abstract idea ([combining images to achieve a desired result]) does not render the claim non-abstract." *RecogniCorp, LLC v. Nintendo Co*., 855 F.3d 1322, 1327 (Fed. Cir. 2017).

## B. '583 Patent

Claim 15 of the 583 Patent reads:

> An apparatus comprising:
>
> a user interface;
>
> a lens;
>
> a recording medium;
>
> a memory and software instructions stored therein;
>
> a processor operatively connected to the memory and the recording medium such that receiving and executing the instructions from the memory causes the processor to:
>
> > designate a subject in an image displayed in the user interface;
> >
> > determine a desired shutter speed;
> >
> > determine a desired number of images to be captured;
> >
> > receive a desired [number] of images captured through the lens and recorded at the recording medium wherein the images include the designated subject;

designate one image from among the desired number of images as a reference image;

determine an offset for each of the desired number of images in relation to the reference image by calculating a number of pixels the designated subject in each image is offset from the designated subject in the reference image;

calculate pixel values for a corrected image based on pixel values of the desired number of images by taking into account the number of pixels each image is offset in relation to the reference image;

display the corrected image in the user interface; and

store the corrected image in the memory.

ECF No. 1-23, at 21.

Google maintains that, like the '788 Patent and the Combined-Image Patents, the '583 Patent is "directed to the abstract idea of combining images to enhance each other and do[es] not claim an element or combination of elements amounting to significantly more than that idea." ECF No. 31, at 14. CIR counters that the '583 Patent claims patentable subject matter in the form of "a specific means of achieving image stabilization that designates a 'reference frame' for purposes of calculating the pixel 'offset' between the location of the designated subject in the reference image in relation to the subsequent images." ECF No. 45, at 21.

Here, applying the same reasoning as above, the Court finds that claim 15 is directed at the abstract idea of combining multiple images to enhance each other, specifically through the means of applying the abstract idea of shifting images by a number of pixels to achieve a desired outcome. Exemplary claim 15 recites typical camera elements, as discussed in *Yu*, 110 F.4th at 1043—including a lens, a recording medium, a memory, and a processor—wherein the processor (1) determines shutter speed and number of images to be taken, (2) designates an image as a reference image, (3) calculates a pixel amount by which the other images are offset by the reference image, and (4) calculates values for a

corrected image. ECF No. 1-23, at 21. This describes a process of obtaining a number of images, identifying a reference image, and shifting the other images by a number of pixels to achieve a corrected, blur-free image. CIR's argument that the patent is directed to a "specific means of achieving image stabilization" does not overcome the fact that the identified means themselves—shifting images by an identified number of pixels to achieve a desired result—are an abstract idea.

CIR argues that the claim is inventive because it designates a "reference frame" for purposes of calculating the pixel offset. ECF No. 45, at 21. However, the claim does not identify how the processor designates a reference frame or calculates a pixel offset. *See Longitude Licensing Ltd. v. Google LLC*, No. 2024-1202, 2025 WL 1249136 (Fed. Cir. Apr. 30, 2025) (holding that claim which "purportedly identifie[d] the technical improvement of more efficiently locating the subject of an image without actually explaining how this process is achieved other than stating that the new data is used in identifying the main object" was directed towards an abstract idea.). Further, CIR argues that the claim is limited by the requirements that the processor determine a shutter speed and a number of images to be captured, both of which impact the number of images and amount of blur to be used and corrected in the image combining and shifting process. However, these limitations are not the crux of the technological advance claimed by the patent. The claimed technological advance remains simply an application of the abstract ideas of combining images to enhance each other and shifting images by a number of pixels to achieve a desired result.

CIR alleges that the invention identified in claim 15 enables an imaging apparatus to "operate differently than it otherwise could," as identified by the claimed "user interface" and "processor" within the claimed apparatus. ECF No. 45, at 22-23 (internal quotation marks and citation omitted). However, "not every claim that recites concrete, tangible components escapes the reach of the abstract-idea inquiry." *In re TLI Commc'ns*

*LLC Pat. Litig.*, 823 F.3d 607 (Fed. Cir. 2016). Indeed, CIR relies on generic terms—"user interface," "processor," "display," and "memory," *see*, *e.g.*, *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1364 (Fed. Cir. 2023)—to perform the steps of collecting, analyzing, and combining images through a pixel-shifting method. The limitations—such as the user interface's alleged connection to the image stabilization technique or the requirement that the processor determine shutter speed—do not alter the Court's conclusion that the focus of the exemplary claim remains directed to an abstract idea. *See Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1362 (Fed. Cir. 2023) ("Nor are we persuaded that [the independent claim]—further requiring processors configured to perform operations with web servers, a database, and a match aggregator—changes the focus of the asserted claims."). The same is true when considering CIR's assertion that the user interface limitation requiring that all processing occur by the imaging device as opposed to a separate post-processing computer constitutes a specific asserted improvement in computer capabilities. ECF No. 45, at 23. Rather, the claim just asserts a particular environment—an imaging device—to carry out the abstract ideas of combining images and shifting them by a number of pixels to achieve a desired result. *See, e.g., In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) ("[A]lthough the claims limit the abstract idea to a particular environment—a mobile telephone system—that does not make the claims any less abstract for the step 1 analysis.").

The Court further notes, as it did in consideration of the '788 Patent, that the process performed by the claimed processor is one that can be performed in the human mind and by hand without the use of a computer. A person is capable of picking up a camera, designating a subject, selecting a shutter speed, and taking a series of images to later combine those images to create an enhanced image with less blur. A telltale sign of abstraction is when the claimed functions are mental processes that can be performed in

the human mind or by hand. *See Trinity Info Media*, 72 F.4th at 1361-62; *Plotagraph*, 2024 WL 223185, at *4.

Lastly, to the extent that CIR relies on the processor's method of analyzing and calculating the amounts to shift particular images as the specific technological advancement, CIR's argument fails. Though the claimed analysis includes activities like "designating a subject" and "calculating a number of pixels" based on that subject, ECF No. 1-23, at 21, such high level limitations—without additional specificity as to how the subject is identified—"do not add enough to transform the claims from abstract to concrete." *Mobile Acuity Ltd. v. Blippar Ltd*., 110 F.4th 1280, 1287 (Fed. Cir. 2024). (internal quotation marks and citation omitted) (finding that a claim that recited "extracting and matching interest points from the first and second images to perform the correspondence between images" did not sufficiently specify how the interest points were determined or used, and did not transform the claim from abstract to concrete); *Longitude Licensing Ltd. v. Google LLC*, No. 2024-1202, 2025 WL 1249136, at *4 (Fed. Cir. Apr. 30, 2025) (finding claim that purportedly improved a process of locating the subject of an image without explaining the process was directed towards an abstract idea). While CIR points to the claimed invention's use of "addition or averaging of pixel values" to determine the image shift amount, as mentioned above: adding the abstract idea of math to the abstract ideas of combining images to enhance one another and shifting images by a pixel amount to achieve a desired result does not make the claims any less abstract under the *Alice* step 1 analysis. *See RecogniCorp, LLC v. Nintendo Co*., 855 F.3d 1322, 1327 (Fed. Cir. 2017).

## II.    *Alice* Step Two

The Court now turns to *Alice* step two. Under the second step of the analysis, the Court asks "whether the claims do significantly more than simply describe the abstract method and thus transform the abstract idea into patentable subject matter." *Affinity Labs*

17

25-cv-00221-GPC-BLM

*of Tex., LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016) (cleaned up). In doing so, courts seek to ascertain whether the patent contains or is directed at an "inventive concept" that serves to "transform the nature of the claim" into patent-eligible subject matter. *Alice*, 573 U.S. at 217 (internal quotation marks and citation omitted). The inventive concept "may arise in one or more of the individual claim limitations or in the ordered combination of the limitations," *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016), but it "must be evident in the claims" themselves, *RecogniCorp LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017). "It is well-settled that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea. Rather, the components must involve more than performance of well-understood, routine, conventional activities previously known to the industry." *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) (quoting *Alice*, 573 U.S. at 225) (cleaned up). Limiting an abstract idea to a "particular technological environment" is similarly insufficient under *Alice* step two. *Alice*, 573 U.S. at 222; *see also CosmoKey Sols. GmbH & Co. KG v. Duo Sec. LLC*, 15 F.4th 1091, 1097 (Fed. Cir. 2021) ("[A]n inventive concept that transforms the abstract idea into a patent-eligible invention must be significantly more than the abstract idea itself, and cannot simply be an instruction to implement or apply the abstract idea on a computer.").

The Federal Circuit has explained that:

> Whether a claim "supplies an inventive concept that renders a claim 'significantly more' than an abstract idea to which it is directed is a question of law" that may include underlying factual determinations. *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018). For example, within the overall step two analysis, "whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact" that "must be proven by clear and convincing evidence." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

*ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 773 (Fed. Cir. 2019).

Google argues that the exemplary claims "merely recite well-known, routine, conventional components and functions, and they do nothing but apply the abstract idea in a generic setting." ECF No. 31, at 21. CIR counters that the technology asserted in the claims was not "well-understood, routine, [or] conventional" at the time of the patents, and that CIR has presented sufficient factual allegations to preclude dismissal at the motion to dismiss stage. Specifically, CIR alleges that the patents represent an unconventional and specific solution to technological problems and thus pass muster under *Alice* step two. ECF No. 45, at 27.

The problems in prior art identified by CIR are, generally: (1) prior post-processing techniques to reduce blur resulted in a loss of data and (2) previous electro-mechanical devices for correcting image blur made lenses heavier and more expensive. ECF No. 45, at 8. CIR alleges that it solved these problems in an unconventional way through the invention of camera technology "that would stabilize a video or image to reduce blur when a subject and/or imaging device is moving during capture without the use of additional electro-mechanical lenses by using specific digital processing techniques." *Id.* (internal quotation marks omitted).

The "digital processing techniques" alleged by the patents "take advantage of the ability of an imager to record multiple images and then use specific techniques to combine those images to achieve a stabilized video or image." *Id.* (internal quotation marks and citation omitted). They further teach that "the imager moves each of the images in the series by an amount which is preferably measured in pixels, in the direction opposite the movement of the imager . . . Thus, the shift of each image is compensated for, and the correct pixels are aligned in each of the images." *Id.* at 8-9 (internal quotation marks and citation omitted).

Thus, in essence, the alleged "inventive concept" that solves the identified problems is the process of combining multiple images to enhance one another and adjusting images by a number of pixels to achieve specific results. These are, themselves, the abstract ideas, and "[a]n inventive concept that transforms the abstract idea into a patent-eligible invention must be significantly more than the abstract idea itself, and cannot simply be an instruction to implement or apply the abstract idea on a computer" or a processor. *CosmoKey*, 15 F.4th at 1097; *see also BSG Tech LLC v. Buyseasons,* Inc., 899 F.3d 1281 (Fed. Cir. 2018) ("[A] claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than the ineligible concept.").

In making its *Alice* step two arguments, CIR relies almost exclusively on the Federal Circuit's decision in *Berkheimer v. HP Inc.* 881 F.3d 1360 (Fed. Cir. 2018). However, in *Berkheimer*, the court first found that the specification described an inventive feature that functioned in a purportedly unconventional manner and "eliminate[d] redundancies, improve[d] system efficiency, reduce[d] storage requirements, and enable[d] a single edit to a stored object to propagate throughout all documents linked to that object." 881 F.3d at 1369. Thus, the Court held that, to the extent the improvements in the specification were captured in the claims themselves, they created a factual dispute regarding whether the invention was well-understood, routine, and conventional, and the claims were, therefore, inappropriate for dismissal or judgment as a matter of law. *Id.* Here, as a matter of law, the purported inventive feature described in the specification and the claims is itself the application of an abstract idea. Thus, the Court holds that CIR did not sufficiently allege an inventive concept, and the factual dispute precluding dismissal at the summary judgment stage in *Berkheimer* does not apply here.

While CIR takes issue with Google's analysis of the claim limitations in isolation—correctly noting that the inventive concept may arise in one or more of the individual claim

limitations or in the ordered combination of the limitations—CIR fails to identify what combination of limitations specifically constitutes an inventive concept. ECF No. 45, at 25-26 (citing *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016)). CIR further argues that the "user interface" and "processor" claimed are not "generic hardware" as determined by the court in *Yu* because (1) the hardware completes different tasks than it did in *Yu* (specifically, accepting user input and shifting images by a number of pixels) and (2) Plaintiff, unlike the patentee in *Yu*, disputes that the hardware is generic. *Id.* at 26. However, it remains that the claims describe typical camera elements—a user interface and processor—as completing their generic roles—i.e. the "user interface" "accept[s] user input," ECF No. 46, at 8, and the "processor" "receiv[es] and execut[es] instructions"—in order to implement an abstract idea. ECF No. 1-23, at 21. *See Trinity Info Media, LLC*, 72 F.4th at 1366-67 (holding that a claim did not include an inventive concept because it used "multiple processors, match servers, unique identifications and/or a match aggregator"); *Free Stream Media Corp. v. Alphonso Inc*., 996 F.3d 1355, 1366 (Fed. Cir. 2021) (holding that a claims recited "the use of generic features, as well as routine functions, to implement the underlying idea" where claims involved a server comprising "a processor," "a memory communicatively coupled with the processor," and "instructions stored in the memory and executed using the processor configured to" match and apply data); *iLife Techs., Inc. v. Nintendo of Am., Inc.*, 839 F. App'x 534, 538 (Fed. Cir. 2021) (finding the claim elements, considered individually and as an ordered combination, failed to receive an inventive concept because, aside from an abstract idea, "the claim recites only generic computer components, including a sensor, a processor, and a communication device"). The claims also do not change how processors function or are arranged within an imaging device. Rather, the claims simply set forth abstract ideas (combining images to enhance one another and shifting images by a number of pixels) that the processor applies in order to obtain a desired result (an enhanced image

1    or stabilized video). Thus, the claims essentially add the abstract ideas of combining

2    multiple images and pixel shifting to a camera processor and say, "apply it." *See, e.g.*,

3    *ChargePoint, Inc.*, 920 F.3d at 774-75.

4         CIR further argues that the patents teach that the inventions result in an improvement

5    in signal-to-noise power ratio in the resulting images. However, CIR does not allege that

6    this improvement is itself the alleged "inventive concept," but rather an improvement

7    achieved through the application of the technique of combining and shifting images to

8    achieve a desired result. Thus, the alleged improvement of signal-to-noise ratio is not

9    evidence of an inventive concept sufficient to pass muster under *Alice* step two. Further,

10   this purported result of improved signal-to-noise power ratio is found nowhere in the claim

11   language.

12        Lastly, at the hearing, CIR emphasized the novelty of the patents at issue, arguing

13   that CIR had created a new and novel way to create vertical and horizontal offsets, calculate

14   those offsets, and adjust the image frames in light of those calculations. CIR seemingly

15   equates the inventive concept inquiry with novelty. However, novelty is not sufficient to

16   establish patent eligibility under § 101. *See Two-Way Media Ltd. v. Comcast Cable*

17   *Commc'ns, LLC*, 874 F.3d 1329, 1336 (Fed. Cir. 2017) ("Eligibility and novelty are

18   separate inquiries."). Indeed, "[w]e may assume that the techniques claimed are

19   groundbreaking, innovative, or even brilliant, but that is not enough for eligibility . . . Nor

20   is it enough for subject-matter eligibility that claimed techniques be novel and nonobvious

21   in light of prior art[.]" *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir.

22   2018) (internal quotation marks and citations omitted).  Accordingly, "[t]he novelty and

23   nonobviousness of the claims . . . does not bear on whether the claims are directed to patent-

24   eligible subject matter under § 101." *Two-Way Media Ltd.*, 874 F.3d at 1336. Here, the

25   Court has found that the Pixel-Shifting Patents are ineligible "because their innovation is

26   an innovation in ineligible subject matter"—namely, using images to enhance one another

27

28

and shifting images by a number of pixels to achieve a desired result. *SAP Am., Inc.*, 898 F.3d at 1163. Thus, CIR's novelty arguments do not establish eligibility of the Pixel-Shifting Patents under *Alice* step two.

## III.    Representativeness

Google argues that the exemplary claims are representative of all the claims in the Combined-Image Patents. ECF No. 31, at 24-25. "Limiting the analysis of a § 101 challenge to representative claims is proper when the claims at issue are substantially similar and linked to the same ineligible concept." *Mobile Acuity*, 110 F.4th at 1290 (internal quotation marks and citation omitted). Thus, a court may treat claims as representative where "the patentee does not present any meaningful argument for the distinctive significance of any claim limitation not found in the representative claim or if the parties agree to treat a claim as representative." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) (citations omitted).

Where representativeness is disputed, the patent challenger "bears the initial burden to make a prima facie showing that the group of claims are substantially similar and linked to the same ineligible concept." *Mobile Acuity*, 110 F.4th at 1290 (internal quotation marks and citation omitted). If the patent challenger makes the required showing, "the burden shifts to the patent owner to present non-frivolous arguments as to why the eligibility of the identified representative claim cannot fairly be treated as" representative, such as by "articulat[ing] why a claim limitation not found in the representative claim has 'distinctive significance' that would have a material impact on the eligibility analysis." *Id.* (quoting *Berkheimer*, 881 F.3d at 1365). If the patent owner successfully presents non-frivolous arguments against representativeness, the patent challenger bears the ultimate burden "to prove either that (i) the representative claim is, in fact, representative, in that any differences among the claims are not material to the eligibility analysis . . . ; or (ii) each separate claim . . . is ineligible for patenting." *Id.* at 1291.

25-cv-00221-GPC-BLM

The Court must first address whether Google has made prima facie showing of representativeness. Google argues that each of the claims in the two Pixel-Shifting patents are substantially similar and linked to the same abstract concept, and that any differences CIR identifies in the claims are immaterial to the § 101 analysis under *Alice*. ECF No. 31 at 24–25.

Google is correct that many of the claims recite either the same process or an apparatus with substantially similar features as the exemplary claim. *See* ECF No. 1-11 ('788 Patent) claim 1, 15, 27; ECF No. 1-23 ('583 Patent) claim 1, 8. These claims recite the same process of using a digital imaging device to combine images to enhance one another through the specific method of moving images by a number of pixels to achieve a desired result. *See Mobile Acuity*, 110 F.4th at 1291 (finding other claims substantially similar where they merely added conventional components or conventional computer activities and were still directed to the same abstract idea).

Both parties' briefs identify differences between the exemplary claims and other claims, but these differences are not substantial enough to divorce them from the underlying abstract concept.[1] *See, e.g.*, '788 Patent claim 5, 12, 18, 24, 31 (introducing a second subject); '788 Patent claims 2, 9, 16, 22, 28 (describing a horizontal and vertical shift amount intended to align the subject in one or more images); '788 Patent claims 7, 14, 20, 26, 33 (requiring the subject be aligned in the same location in the stabilized video); '788 Patent claims 6, 13, 19, 25, 32 (describing modifying the images by shifting a

---

[1] CIR first argues that independent claims 1, 15, 21, and 27 of the '788 Patent recite the calculation and use of horizontal and vertical "shift amounts" that are not included in independent claim 8. However, claim 8 does recite "shift[ing] the one or more images vertically and horizontally by an integer of pixels . . . wherein the amount of vertical and horizontal shift for each of the one or more images is determined at least in part based on the location of the subject in the image." ECF No. 1-11, at 20. Thus, this argument does not weigh against representativeness.

reference point in the images). While changing the way in which the processor calculates the pixel shift—based on one subject, two subjects, or a different "reference point,"—slightly changes the claimed process, it is not an alteration that changes the fact that the claim is directed to the abstract ideas of combining images to enhance one another and shifting images by a number of pixels to achieve a desired result. Therefore, CIR's arguments as to the identified differences in the '788 Patent claims fail.

As to the '583 Patent, CIR again argues that several differences between exemplary claim 15 and the other claims defeat Google's allegations of representativeness. *See*, *e.g.*, '583 Patent claim 23 (requiring the processor receive input at the user interface to designate an image subject); '583 Patent claims 8, 9, 24, 26 (requiring user input at the user interface); '583 Patent claims 3, 25 (requiring the processor designate the subject); '583 Patent claims 22, 30 (specifying that the processor calculates pixel values for the corrected image by using addition or averaging pixel values); '583 Patent claims 6, 13, 21, 29 (specifying that the images are received sequentially); '583 Patent claims 4, 11, 19, 27 (requiring aligning the subject in the same location across images); '583 Patent claims 2, 16 (requiring the processor designate the subject using image segmentation or pattern recognition techniques). Requiring user input does not change the fact that the claim is directed to the abstract ideas of combining images to enhance one another and shifting images by a number of pixels to achieve a desired result. The same is true for whether the user or processor designates the subject, as well as the methodology the processor might apply to make the designation prior to combining images to enhance one another. As for the specific method of calculating the pixel shift, applying the abstract idea of math to achieve the abstract idea of combining images to enhance each other does not change the fact that the claim is directed to the same abstract idea of combining images to enhance each other through a pixel-shifting method.

25-cv-00221-GPC-BLM

Further, CIR has failed to articulate how the limitations outside the exemplary claim would "have a material impact on the eligibility analysis." *Mobile Acuity Ltd*., 110 F.4th at 1290. Though CIR identifies the differences and alleges that certain differences rebut elements of Google's claims, CIR does not make a showing that any limitation contained outside the exemplary claims transforms the claim into one that is not directed to the abstract ideas of combining images to enhance one another and shifting images by a number of pixels to achieve a desired result.

Accordingly, Google has met its burden to show that the exemplary claims are representative of all other claims in the Pixel-Shifting Patents.

## IV.    Leave to Amend

CIR requests leave to amend the complaint to address any factual shortcomings in the *Alice* step two analysis. ECF No. 45, at 28–29.

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. *See DeSoto,* 957 F.2d at 658; *Schreiber,* 806 F.2d at 1401.

CIR seeks leave to amend for four reasons: (1) to supplement its allegations regarding the state of the art as of the priority date, including whether processors able to detect a subject within an image were routine and conventional; (2) to supplement its allegations regarding "commercial embodiments of the claims that were praised by others;" (3) to describe "other stabilization and blur correction methods . . . thereby demonstrating no risk of preemption;" and (4) to supplement its allegations with a description of Dr. Ozluturk's prototyping of the inventions in the mid-2000s and the reactions of others at the time to the improvements the inventions provided. ECF No. 45, at 28-29.

As discussed above, the Federal Circuit in *Yu* found that claims similarly directed at the abstract idea of combining images to enhance each other failed at step two because they relied on similar conventional components that were "well-understood, routine, [and] conventional." 110 F.4th at 1043, 1045. Further, as the Court noted in deciding the eligibility of the Combined-Image Patents, the patent at issue in *Yu* was issued before the priority date of the asserted patents here. *Yu*, 611 F. Supp. 3d at 911, *aff'd*, 1 F.4th at 1040. Thus, CIR's proposed amendments relating to the state of the art as of the priority date would be futile.

Perhaps more importantly, such amendments would not change the fact that the patents' asserted "inventive concept" is simply an application of the same ineligible concept towards which the patents are directed—using images to enhance one another by shifting images by a number of pixels. This simply cannot provide the inventive concept to render the invention "significantly more" than the abstract idea. *BSG Tech LLC v. Buyseasons,* Inc., 899 F.3d 1281 (Fed. Cir. 2018) ("[A] claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than the ineligible concept.").

The Court further finds that proposed amendments regarding the purported inventive concepts of the exemplary claims—for instance, allegations regarding commercial embodiments or reactions to mid-2000s prototypes—would also be futile. This information would be "relevant to a novelty and obviousness analysis, and not whether the claims were directed to eligible subject matter." *Two-Way Media Ltd*., 874 F.3d at 1339-40. And, as mentioned above, "[e]ligibility and novelty are separate inquiries." *Id.* at 1340.

Lastly, Plaintiff cannot cure the deficiency in the exemplary claims with factual allegations because the claims, as written, do not support a finding that they supply an inventive concept. They refer only to "processors" configured to apply an abstract idea: combining images to enhance one another through the means of shifting images by a

number of pixels to obtain a desired result. As the Court previously found as to the Combined-Image Patents, the claims are too broad and lack any meaningful limitations that would lead to a finding that they supply any inventive concept beyond the abstract idea itself. *See Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 706 (Fed. Cir. 2023) ("No amendment to a complaint can alter what a patent itself states."); *Semiconductor Design Techs., LLC v. Cadence Design Sys., Inc.*, 735 F. Supp. 3d 1162, 1169 (N.D. Cal. 2024) ("No amendment to the FAC would cure the validity problems with the underlying patents.").

Accordingly, the Court DENIES CIR leave to amend the complaint.

## CONCLUSION

For the above reasons, the Court GRANTS Google's partial motion to dismiss without leave to amend.

**IT IS SO ORDERED.**

Dated:  December 4, 2025

Hon. Gonzalo P. Curiel
United States District Judge

25-cv-00221-GPC-BLM